1

2

3

4                                                          **E-FILED on** ___2/23/07___

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                             SAN JOSE DIVISION

11

12   In re THE LEISURE CORPORATION,            No. C-03-03012 RMW

13        Debtor.
     _____

14   THE LEISURE CORPORATION,                  OPINION AFFIRMING DISMISSAL OF
                                                AMENDED COMPLAINT BY THE UNITED
15        Appellant,                            STATES BANKRUPTCY COURT

16   v.
                                                **[Re Docket Nos. 36, 60, 63]**
17   KENNETH H. PROCHNOW, and LAW
     OFFICES OF KENNETH H. PROCHNOW,
18
19        Appellees.

20

21

22

23

24          Appellant the Leisure Corporation appeals under 28 U.S.C. § 158 the bankruptcy court's

25   order (issued on April 11, 2003 and modified on May 14, 2003) granting the motion to dismiss of

26   appellees Kenneth H. Prochnow and Law Offices of Kenneth H. Prochnow (collectively,

27   "Prochnow").  Leisure Corporation timely filed a notice of appeal on June 20, 2003.  For the reasons

28
     OPINION AFFIRMING DISMISSAL OF AMENDED
     COMPLAINT BY THE UNITED STATES BANKRUPTCY
     COURT

1  set forth below, the court affirms the decision of the bankruptcy court.

2  **I. BACKGROUND**

3        Leisure Corporation is a corporation owned wholly by George Drucker and his wife.  Leisure

4  Corporation filed a Chapter 11 petition on August 21, 1996, and served as debtor in possession of

5  the bankruptcy estate, operating a wax museum in Monterey until late 2000.

6        Wayne Silver initially represented Leisure Corporation as special counsel in bankruptcy

7  court litigation against its lessor.  Beginning on April 30, 1997, Prochnow replaced Silver; at about

8  the same time, attorney Kenneth Campeau became Leisure Corporation's general bankruptcy

9  counsel.  Prochnow represented Leisure Corporation in three separate adversary proceedings against

10  its lessor, and in March 1999 won a judgment in one proceeding for Leisure Corporation in the

11  amount of $372,608.76 plus costs and attorney's fees.  The lessor appealed and posted a bond in

12  May 1999, preventing Leisure Corporation from collecting on the judgment.  As a result, Leisure

13  Corporation ran short of cash and was not able to cover all expenses of administering its Chapter 11

14  case.

15        In the summer of 2000, Leisure Corporation decided to "factor" part of the judgment to Law

16  Finance Group, agreeing to sell a $256,000 interest in the judgment in exchange for $128,000 cash.

17  On August 21, 2000, Leisure Corporation and Prochnow entered into a written agreement (the

18  "Factoring Agreement") which provided that Prochnow would subordinate to Law Finance Group

19  his rights with respect to the first $256,000 recovered under the judgment,[1] would receive $32,500 of

20  the factoring proceeds, and would withdraw his administrative expense claim against the estate to

21  the extent of $60,000, while Leisure Corporation would use the balance of the proceeds for

22  corporate purposes and would agree that fees sought by Prochnow were reasonable and not

23  challenge them in court.  The Factoring Agreement was expressly subject to bankruptcy court

24

25

26  [1]  Leisure Corporation claims for the first time in its reply brief that Prochnow was never asked to
     subordinate his interest in the judgment to Law Finance Group; as this appears to be at odds with
27  Leisure Corporation's admission that the Factoring Agreement required Prochnow to "adjust" his
     appellate lien rights to Law Finance Group, the court disregards this assertion.
28
     OPINION AFFIRMING DISMISSAL OF AMENDED
     COMPLAINT BY THE UNITED STATES BANKRUPTCY
     COURT

1   approval.  Campeau filed a motion for approval of the Factoring Agreement with the bankruptcy

2   court ("Factoring Motion"); the court set the motion for hearing on September 20, 2000.

3          However, on September 4, 2000, Leisure Corporation reached a settlement with its lessor at a

4   mediation which resolved all disputes between the parties ("Settlement Agreement").  Leisure

5   Corporation alleges that it agreed to the settlement under duress, because Prochnow allegedly

6   repudiated the Factoring Agreement and Leisure Corporation therefore had no other access to funds

7   to operate the estate.  Leisure Corporation alleges that Prochnow indicated that he was unwilling to

8   proceed with the appeal because it would take too long, that he would prevent Leisure Corporation

9   from obtaining funding to pursue an appeal, and that he wanted to be paid immediately rather than

10  waiting for payment.  On September 15, 2000, Silver filed an objection to the Factoring Agreement

11  to prevent the use of factoring proceeds to pay for any administrative claims before his

12  previously-approved fees were paid.  The Factoring Motion was continued pending final approval of

13  the Settlement Agreement.  Leisure Corporation's lessor filed a motion to approve the Settlement

14  Agreement, which the bankruptcy court heard on December 14, 2000.  Leisure Corporation alleges

15  that in October 2000, Drucker asked Prochnow to reconsider and proceed with the Factoring Motion

16  and the appeal by Leisure Corporation's lessor, to which Prochnow allegedly responded in a letter

17  dated October 21, 2000 saying:

18          If as you threaten you will proceed on Thursday to cash out a portion of the
        judgment for your own benefit, I will appear to demand that all factor proceeds be
19      paid over to my firm's trust account, and applied, pro rate, against Leisure Corp's
        administrative creditor claims.  I have no agreement with you or Leisure Corp as to
20      anything relating to this funding motion, and as you well know, I am not about to
        allow the judgment that secures my firm's preposterously large receivable and
21      payment to Leisure Corp's other creditor's (*sic*) (including the unquantified but
        undoubtedly enormous fees due to Ken Campeau and his firm), to be carved up and
22      dissipated through payments to Leisure Corp for your personal benefit.

23          The parties to the Settlement Agreement are Leisure Corporation, Drucker, Drucker's wife,

24  and Leisure Corporation's lessor and its principals.  The Settlement Agreement was signed by

25  counsel for all parties, including counsel for the Druckers.  A motion to approve the Settlement

26  Agreement was filed and notice provided to all creditors, including that the settlement would allow

27  Leisure Corporation to pay all claims in full.  The notice of motion also advised that if the

28
    OPINION AFFIRMING DISMISSAL OF AMENDED
    COMPLAINT BY THE UNITED STATES BANKRUPTCY
    COURT
                                            3

1   Settlement Agreement was approved, Campeau would accept $160,000 in fees for services rendered

2   through September 4, 2000, while Prochnow would accept $198,166.67 in fees for his services.

3   These amounts were "significantly" less than what Campeau and Prochnow had billed.  Drucker

4   attended the December 14, 2000 hearing and signed a declaration in support of the settlement, which

5   stated that he considered the settlement to be in the estate's best interests because it would halt

6   protracted litigation that Leisure Corporation could not afford and might possibly lose, while

7   assuring creditors of full payment.

8       The bankruptcy court found that the settlement was fair and equitable under the standards set

9   forth in *In re A & C Properties*, 784 F.2d 1377 (9th Cir. 1986), and issued three orders on December

10   15, 2000 ("December 2000 orders").  The first order approved the settlement ("Settlement Order").

11   The second order entitled "Order Authorizing Payment of Attorneys' Fees and Costs," set fees as

12   explained above, and indicated that the payment to Prochnow fully satisfied Leisure Corporation's

13   obligation to Prochnow.  The third order was a reduction to writing of a past fee ruling made at a

14   hearing on June 1, 2000, approving Prochnow's compensation in the amount of $203,641.16.

15       On January 5, 2001, Campeau filed a motion on behalf of Leisure Corporation to dismiss

16   Leisure Corporation's bankruptcy case, which was set for hearing on January 25, 2001.  On January

17   14, 2001, Drucker sent a letter to the bankruptcy judge alleging that he had been pressured by

18   Prochnow into agreeing to the settlement, that Prochnow's fees were "unreasonable and

19   disproportional" to the amount of Leisure Corporation's recovery, and asking the judge to "examine

20   the reasonableness" of the fees awarded to Prochnow.  The judge did not reply to the letter but

21   ordered it filed under seal and sent copies of the sealing order to Drucker, Prochnow and Campeau.

22       The hearing on Leisure Corporation's motion to dismiss the bankruptcy case took place on

23   January 25, 2001.  Drucker did not appear, having telephoned the court earlier to say that he was ill

24   and would not be able to appear.[2]  Prochnow indicated at the hearing that he was opposed to the

25   dismissal of the bankruptcy case if his fees were going to be reexamined by the court.  The dismissal

26   _____

27   [2] The bankruptcy court noted at the hearing that Drucker would have been permitted to appear by
    telephone; Drucker later indicated that he had become ill at the last minute and was not aware he
    would have been allowed to appear by telephone at such short notice.

28   OPINION AFFIRMING DISMISSAL OF AMENDED
    COMPLAINT BY THE UNITED STATES BANKRUPTCY
    COURT

1   hearing was continued to February 8, 2001, and the court indicated that the case would not be

2   dismissed if any motion challenging Prochnow's fees were filed before that date.[3]

3         Drucker did appear at the continued hearing on February 8, 2001.  The bankruptcy court

4   again stated that the case would not be dismissed if there was a motion challenging Prochnow's fees,

5   but that the court was unaware of any such motion being filed.  Campeau indicated he was also not

6   aware of such a motion.  Drucker said nothing about such a motion either.  The court then dismissed

7   the bankruptcy case, reserving jurisdiction only over certain money being held by Campeau subject

8   to certain liens, and over the division of fees to Campeau and Leisure Corporation's previous

9   lawyers (not including Prochnow) in the bankruptcy case.  The bankruptcy court issued an order to

10  this effect on February 14, 2001.

11        On August 31, 2001, Leisure Corporation and Drucker filed a complaint in state court which

12  sought general and punitive damages for legal malpractice, breach of contract, breach of fiduciary

13  duty, and intentional infliction of emotional distress allegedly committed by Prochnow and

14  Campeau.[4]  This complaint was later removed to the bankruptcy court.  In October 2001, Prochnow

15  and Campeau each sought a temporary stay of this litigation pending the consideration of a final fee

16  application for Campeau.  Leisure Corporation and Drucker opposed, but also asked for time to

17  retain new counsel to replace their original counsel who was withdrawing from the case.  The

18  motions were heard on December 6, 2001, and the court granted the stay without prejudice to any

19  party seeking to lift the stay for good cause.

20        On April 9, 2002, Leisure Corporation filed a "Motion to Lift Stay and Allow Amendment

21  and Order Response."  The bankruptcy court issued an order granting the motion on May 23, 2002,

22  which also stated that Leisure Corporation had no right to a jury trial.  On June 3, 2002, Leisure

23  Corporation filed an "Amended Complaint and FRCP 60(b)(3)/Rule 9024 Motion to Set Aside

24  

25  [3]  The court disregards Leisure Corporation's claim that Drucker was unaware the bankruptcy court
    would not have dismissed the bankruptcy case at the February 8, 2001 hearing if a motion

26  concerning Prochnow's fees was filed prior to the hearing, as this was first raised in Leisure
    Corporation's reply papers.

27  [4]  The complaint also alleged conversion of Leisure Corporation's funds by Campeau only.
    Campeau is not a party to this appeal

28  

OPINION AFFIRMING DISMISSAL OF AMENDED
COMPLAINT BY THE UNITED STATES BANKRUPTCY
COURT

Orders" which alleged that Prochnow committed legal malpractice, breach of fiduciary duty, breach of contract, and intentional interference with prospective economic advantage, and included a fifth "cause of action" which requested that the bankruptcy court set aside all fee orders regarding Prochnow's compensation under Federal Rule of Civil Procedure 60(b)(3) and Federal Rule of Bankruptcy Procedure 9024.[5]  Prochnow filed a motion to dismiss on August 6, 2002, and the bankruptcy court granted the motion on April 11, 2003 ("Dismissal Order").  The bankruptcy court amended the order granting the motion on May 14, 2003, and Leisure Corporation timely filed a notice of appeal.

## II.  ANALYSIS

### A.  Standard of Review

When considering an appeal from the bankruptcy court, a district court uses the same standard of review that a circuit court would use in reviewing a decision of a district court.  *See Ford v. Baroff* (*In re Baroff*), 105 F.3d 439, 441 (9th Cir. 1997).  Therefore, "findings of fact are reviewed under the clearly erroneous standard, and conclusions of law, *de novo*."  *Christensen v. Tucson Estates* (*In re Tucson Estates*), 912 F.2d 1162, 1166 (9th Cir. 1990).

While Prochnow's motion was filed as a motion to dismiss for failure to state a claim under FRCP 12(b)(6), that rule provides that "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment" under FRCP 56.  No formal or explicit notice is required, so long as "the non-moving party is fairly apprised before the hearing that the court will look beyond the pleadings."  *In re Rothery*, 143 F.3d 546, 549 (9th Cir. 1998) (quotation marks omitted).   A "represented party who submits matters outside the pleadings to the judge and invites consideration of them has notice that the judge may use them to decide a motion originally noted as a motion to dismiss, requiring its transformation to a motion for summary judgment."  *San Pedro Hotel Co. v.*

---

[5]  For brevity, further references to the Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure will be "FRCP" and "FRBP," respectively.

OPINION AFFIRMING DISMISSAL OF AMENDED
COMPLAINT BY THE UNITED STATES BANKRUPTCY
COURT

1    *City of Los Angeles*, 159 F.3d 470, 477 (9th Cir. 1998) (citations and quotation marks omitted).

2    Both parties in this case requested judicial notice of numerous exhibits in connection with the

3    motion to dismiss, and the bankruptcy court clearly considered those exhibits and made a finding

4    pursuant to FRBP 7052 that the facts in the case were "largely undisputed."  Dismissal Order at 3.

5           A grant of summary judgment is reviewed *de novo*.  *United States v. City of Tacoma*, 332

6    F.3d 574, 578 (9th Cir. 2003).  The evidence must be reviewed in the light most favorable to Leisure

7    Corporation, the non-moving party, to determine if there are any genuine issues of material fact and

8    whether the bankruptcy court correctly applied the substantive law.  *Olsen v. Idaho State Bd. of*

9    *Med.*, 363 F.3d 916, 922 (9th Cir. 2004).  The bankruptcy court may be affirmed on any ground

10   supported by the record.  *Id.*

11   **B.  The Bankruptcy Court Properly Declined to Set Aside the December 2000 Orders**

12          The fifth claim for relief is entitled "Motion to Disgorge and Set Aside All Orders Approving

13   Defendant Prochnow's Fees Under FRCP 60(b)(3)/Rule 9024."  FRCP 60(b) states that "[o]n motion

14   and on such terms as are just, the court may relieve a party or a party's legal representative from a

15   final judgment, order, or proceeding for . . . fraud . . . , misrepresentation, or other misconduct of an

16   adverse party."  The rule states further that "[t]he motion shall be made within a reasonable time,

17   and for [fraud, misrepresentation or other misconduct] not more than one year after the judgment,

18   order, or proceeding was entered or taken."  *Id.*  However, "[t]his rule does not limit the power of a

19   court to entertain an independent action to relieve a party from a judgment, order, or proceeding."

20   *Id.*  The moving party "bears the burden of proving the existence of a justification for Rule 60(b)

21   relief."  *Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir. 1988).  Leisure Corporation states that its

22   fifth claim for relief is being brought "generally" under FRCP 60 as well as under FRBP 9024

23   (which incorporates FRCP 60 into the rules of bankruptcy procedure).

24          FRCP 60(b) clearly contemplates that relief under the rule is ordinarily to be obtained by

25   motion.  The bankruptcy court chose to treat the fifth amended cause of action as a motion under

26   FRCP 60(b)(3), which was consistent with Leisure Corporation's claim that cited FRCP 60(b)(3) and

27   indicated that relief was being sought on the grounds of Prochnow's alleged fraud, misrepresentation

28

OPINION AFFIRMING DISMISSAL OF AMENDED
COMPLAINT BY THE UNITED STATES BANKRUPTCY
COURT

and misconduct.  The decision to treat a claim for relief as a FRCP 60(b) motion is at the discretion of the court.  *Engleson v. Burlington N. R.R. Co.*, 972 F.2d 1038, 1042 (9th Cir. 1992).  A bankruptcy court's denial of a 60(b) motion is also reviewed for an abuse of discretion.  *Civic Ctr. Square v. Ford (In re Roxford Foods)*, 12 F.3d 875, 879 (9th Cir. 1993).  Rather than reach the merits of Leisure Corporation's motion, the bankruptcy judge determined that (1) the claim was to be construed as a Rule 60(b)(3) motion and was therefore time-barred, (2) no grounds existed to apply equitable estoppel to toll the statute of limitations, and (3) the FRBP 9024 exception from the one-year bar for reconsideration of claims allowed "without a contest" did not render Leisure Corporation's motion timely.

With respect to whether Leisure Corporation's motion was time-barred under FRCP 60(b)(3), the bankruptcy court noted that the FRCP 60(b)(3) motion was first set forth in Leisure Corporation's First Amended Complaint, more than one year after the December 2000 orders and that it was therefore beyond the one-year limit for motions under that rule.  Leisure Corporation filed its amended complaint on June 3, 2002, and the bankruptcy court had entered all orders concerning Prochnow's employment and compensation more than one year prior to that date.[6]  The bankruptcy court properly rejected Leisure Corporation's argument that the motion related back to earlier documents under FRCP 15(c)(2) because FRCP 15(c) provides for relation back of *pleadings*, while the fifth amended cause of action was treated as a *motion* at the court's discretion.  To allow Leisure Corporation to circumvent the timing rules by "pleading" a FRCP 60(b) motion and then using the liberal relation-back provisions under Rule 15(c) to make its motion timely seems clearly against the intent of the rules, given the distinction between pleadings and motions in FRCP 8 and the fact that FRCP 6 specifically restricts the judge's discretion to enlarge time under FRCP 60 to the timing provisions contained within that rule.

---

[6]  Leisure Corporation filed a Motion to Lift Stay and Allow Amendment and Order Response on April 9, 2002, which the bankruptcy court granted on May 23, 2002.  For the purposes of this analysis, it is immaterial whether Leisure Corporation is considered to have made its Rule 60(b) on the date of filing its amended complaint or the date of filing the Motion to Lift Stay, as both dates are over a year past December 2000.

OPINION AFFIRMING DISMISSAL OF AMENDED
COMPLAINT BY THE UNITED STATES BANKRUPTCY
COURT

1    The bankruptcy court also properly rejected Leisure Corporation's claims that the motion

2    should be "generally" interpreted as falling under FRCP 60(b), in particular FRCP 60(b)(6).  Leisure

3    Corporation failed to plead any other section of FRCP 60(b) aside from subsection (3), and this court

4    agrees that Leisure Corporation's claims cannot be interpreted to fall under any other subsection

5    except possibly for subsection (6), which provides relief for "any other reason justifying relief from

6    the operation of the judgment."  FRCP 60(b)(6).  Even assuming that the claim would constitute a

7    motion under FRCP 60(b)(6), FRCP 60(b)(6) "is to be utilized only where extraordinary

8    circumstances prevented a party from taking timely action to prevent or correct an erroneous

9    judgment."  *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993).

10   Furthermore, "[i]t is well established that a motion cannot be granted under FRCP 60(b)(6) if the

11   motion can be justified under subsections [dealing with fraud, misrepresentation or other

12   misconduct]."  *In re Golob*, 146 B.R. 566, 569 (B.A.P. 9th Cir. 1992) (citing *Liljeberg v. Health

13   Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11 (1988)).  "To receive Rule 60(b)(6) relief, a

14   moving party must show both injury and that circumstances beyond its control prevented timely

15   action to protect its interests. . . .  Neglect or lack of diligence is not to be remedied through Rule

16   60(b)(6)."  *Lehman v. United States*, 154 F.3d 1010, 1017 (9th Cir. 1998) (citations and quotation

17   marks omitted).  Even accepting Leisure Corporation's argument that it was unable to contest the

18   December 2000 orders because of duress, Leisure Corporation was presumably no longer under

19   duress as of August 31, 2001 when it filed its original complaint against Prochnow.  The one year

20   bar under FRCP 60(b)(3) did not expire until December 15, 2001, yet Leisure Corporation waited

21   until June 3, 2002 (the filing date of its amended complaint) to make a motion under FRCP 60(b).

22   Assuming Leisure Corporation's allegations regarding Prochnow's duress provide a factual basis for

23   a finding of duress, Leisure Corporation had ample opportunity to file a timely motion under FRCP

24   60(b)(3) but simply failed to do so.  The bankruptcy court did not abuse its discretion by ruling

25   FRCP 60(b)(3) rather than FRCP 60(b)(6) controlled Leisure Corporation's claim for entitlement to

26   relief.

27

28

OPINION AFFIRMING DISMISSAL OF AMENDED
COMPLAINT BY THE UNITED STATES BANKRUPTCY
COURT

9

1    Leisure Corporation argues that it was prevented from timely filing a motion for relief

2    because Prochnow filed for and received a stay of litigation and because Prochnow failed to submit

3    a final fee application.  Leisure Corporation also argues that any statute of limitation should be

4    tolled because of Prochnow's unclean hands.  However, the bankruptcy court did not abuse its

5    discretion by finding that neither FRCP 60(b)(6) nor equitable estoppel required that Leisure

6    Corporation be granted relief on those grounds.  Prochnow's motion to stay the case was not granted

7    until December 6, 2001, and the stay was imposed without prejudice to any party seeking to end it

8    for good cause.  Leisure Corporation was also not prejudiced by Prochnow's failure to file a final fee

9    application.  Leisure Corporation filed its original complaint well within the one-year time bar and

10   there is no reason why Leisure Corporation needed to wait for Prochnow to file a fee application in

11   order to file a FRCP 60(b) motion to set aside Prochnow's previously awarded fees.  Leisure

12   Corporation's "unclean hands" argument does not apply; the bankruptcy court correctly pointed out

13   that it is Leisure Corporation, not Prochnow, who seeks relief here, and the "unclean hands" doctrine

14   serves to prevent a party with unclean hands from receiving relief.  *See Precision Instrument Mfg.*

15   *Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945).

16   Although Leisure Corporation claims that Prochnow's behavior amounted to "fraud on the

17   court" justifying applying FRCP 60(b)(6) rather than FRCP 60(b)(3), "[t]o constitute fraud on the

18   court, the alleged misconduct must harm the integrity of the judicial process."  *In re Levander*, 180

19   F.3d 1114, 1119 (9th Cir. 1999) (quotation marks and brackets omitted).  Leisure Corporation

20   accuses Prochnow of applying duress to prevent Leisure Corporation from objecting to the

21   Settlement Agreement and preventing the Factoring Motion from being heard by the bankruptcy

22   court.  Leisure Corporation alleges that Prochnow had a conflict of interest with Leisure Corporation

23   that was not disclosed to the court.  However, the bankruptcy court noted that it was required to

24   make an independent evaluation as to whether the Settlement Agreement served the best interests of

25   the estate.  "A court may approve a compromise or settlement only when it is fair and equitable."  *In*

26   *re A & C Props.*, 784 F.2d 1377, 1383 (9th Cir. 1986) (quotation marks omitted).  To determine

27          the fairness, reasonableness and adequacy of a proposed settlement agreement, the
            court must consider: (a) [t]he probability of success in the litigation; (b) the

28

OPINION AFFIRMING DISMISSAL OF AMENDED
COMPLAINT BY THE UNITED STATES BANKRUPTCY
COURT

difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* at 1381.  The bankruptcy court appears to have considered all these factors when it approved the Settlement Agreement.  The court noted that it allowed all creditors to be paid at once, that it provided for reduced fees to Prochnow, that further litigation had no guarantee of success, and that estate funds would have to be devoted to maintaining an unprofitable business if litigation continued.  Leisure Corporation itself does not object to the Settlement Agreement as a whole but only to the amount paid as fees to Prochnow.

The alleged lack of disclosure of the Factoring Agreement and Prochnow's alleged actions forcing Leisure Corporation to agree to settlement do not by themselves show fraud on the court. *See Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 780 (9th Cir. 2003) ("Non-disclosure, or perjury by a party or witness, does not, by itself, amount to fraud on the court").  However, the bankruptcy court was aware that Drucker had objections to Prochnow's fees as a result of Drucker's January 14, 2001 letter, but when Drucker was given an opportunity at the February 8, 2001 hearing to state his objections on the record, he chose not to do so.  Furthermore, the bankruptcy court clearly indicated that knowing the specific circumstances surrounding the Factoring Agreement would not have changed its opinion that the Settlement Agreement served the estate's interests. Dismissal Order at 37.  Because the non-disclosure of the Factoring Agreement was not material to the bankruptcy court's assessment of the Settlement Agreement, including its provisions for Prochnow's fees, Prochnow's alleged actions cannot constitute fraud on the court.

Leisure Corporation's argument that the December 2000 orders were entered "without a contest" and that FRBP 9024 therefore provides an exception to the one-year bar was properly rejected by the bankruptcy court.  It noted that there is no clear statutory or case law definition for the phrase "without a contest."  However, the bankruptcy court cited *In re Colley*, 814 F.2d 1008 (5th Cir. 1987), as supporting the general consensus that "contest" in this context means "litigation." The bankruptcy court further cited *In re Dailey*, 47 F.3d 365 (9th Cir. 1995) for the proposition that an opportunity to litigate is equivalent to an actual litigation.  Prochnow points out that a number of

OPINION AFFIRMING DISMISSAL OF AMENDED
COMPLAINT BY THE UNITED STATES BANKRUPTCY
COURT

1    oppositions were filed to his interim fee applications, including oppositions by Leisure Corporation.

2    Appellee's Brief at 32 n.3.  Furthermore, the bankruptcy court noted that Leisure Corporation was

3    given notice of all orders concerning Prochnow's final compensation, and Leisure Corporation had

4    opportunities to object to the orders at the February 8, 2001 hearing, yet said nothing when the

5    bankruptcy court asked if anyone had any objections.

6         FRCP 60(b) also requires that any motion for relief as sought by Leisure Corporation "be

7    made within a reasonable time" as well as within one year for motions.  *See* Charles Alan Wright *et*

8    *al.*, *Federal Practice and Procedure*, *Civil* § 2866 (2d ed. 2006) ("The one-year period represents an

9    extreme limit, and the motion will be rejected as untimely if not made within a 'reasonable time'

10   even though the one-year period has not expired.").  As stated above, Leisure Corporation had ample

11   opportunity to file a motion for relief within the one-year period but failed to do so.  "The district

12   court may affirm on any ground supported by the record, even if it differs from the ground relied

13   upon by the bankruptcy court." *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d

14   1039, 1046 (9th Cir. 2003).  The undisputed facts indicate that Leisure Corporation had adequate

15   opportunities to contest Prochnow's fee applications but chose not to do so, and in any event Leisure

16   Corporation's motion was not made within a reasonable time.  It was not an abuse of discretion for

17   the bankruptcy court to deny Leisure Corporation's FRCP 60(b) motion.

18   **C.  Res Judicata Effect**

19        The bankruptcy court ruled that the Payment Order was res judicata as to all of Leisure

20   Corporation's claims for relief.

21        **1.  Neither FRCP 8 Nor the Doctrine of Unclean Hands Bar Application of Res Judicata**

22        Leisure Corporation argues that because res judicata is an affirmative defense, Prochnow

23   should have been required under FRCP 8(c) to plead it in an answer, not allowed to assert it in a

24   motion to dismiss under FRCP 12(b)(6).  Although "[o]rdinarily affirmative defenses may not be

25   raised by motion to dismiss," inclusion into a FRCP 12(b)(6) motion is proper when "the defense

26   raises no disputed issues of fact."  *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).

27   Furthermore, Prochnow's motion was treated as one for summary judgment.  *See* FRCP 12(b), (c).

28

OPINION AFFIRMING DISMISSAL OF AMENDED
COMPLAINT BY THE UNITED STATES BANKRUPTCY
COURT

1    Leisure Corporation also argues that Prochnow should be barred from asserting res judicata

2  as a defense because of his unclean hands, on the premise that res judicata is an equitable defense.

3  This premise, however, is not accurate.  Res judicata and collateral estoppel are "judicially created

4  rules . . . to conserve judicial resources, protect litigants from multiple lawsuits, and foster certainty

5  and reliance in legal relations."  *United States v. ITT Rayonier*, 627 F.2d 996, 1000 (9th Cir. 1980).

6  Res judicata is not an equitable defense.  *See Federated Dept. Stores v. Moitie*, 452 U.S. 394, 401

7  (1981) ("The doctrine of res judicata serves vital public interests beyond any individual judge's ad

8  hoc determination of the equities in a particular case.").  "There is simply no principle of law or

9  equity which sanctions the rejection by a federal court of the salutary principle of res judicata."  *Id*.

10  (quotation marks omitted).  Prochnow's alleged unclean hands do not bar application of res judicata.

11    **2.  The Payment Order was a Final Judgment on the Merits of Leisure Corporation's**
     **Causes of Action for Malpractice and Breach of Fiduciary Duty**

12    The court turns next to Leisure Corporation's contention that the preclusive effect of the

13  Payment Order did not prevent Leisure Corporation from later asserting claims for legal malpractice

14  and breach of fiduciary duty against Prochnow.

15    "The doctrine of res judicata bars a party from bringing a claim if a court of competent

16  jurisdiction has rendered final judgment on the merits of the claim in a previous action involving the

17  same parties or their privies."  *In re Int'l Nutronics*, 28 F.3d 965, 969 (9th Cir. 1994).  "Res judicata,

18  or claim preclusion, prevents the relitigation of a claim previously tried and decided. Collateral

19  estoppel, or issue preclusion, bars the relitigation of issues actually adjudicated in previous litigation

20  between the same parties."  *Clark v. Bear Stearns & Co*., 966 F.2d 1318, 1320 (9th Cir. 1992).  "Res

21  judicata bars all grounds for recovery which could have been asserted, whether they were or not, in a

22  prior suit between the same parties on the same cause of action."  *Id.*  "In determining whether

23  successive lawsuits involve the same cause of action," a court must consider: "(1) whether rights or

24  interests established in the prior judgment would be destroyed or impaired by prosecution of the

25  second action; (2) whether substantially the same evidence is presented in the two actions; (3)

26  whether the two suits involve infringement of the same right; and (4) whether the two suits arise out

27  of the same transactional nucleus of facts."  *Id.*  "The elements of issue preclusion are: (1) the issue

28

OPINION AFFIRMING DISMISSAL OF AMENDED
COMPLAINT BY THE UNITED STATES BANKRUPTCY
COURT

decided in the prior adjudication is substantially identical to the issue in the subsequent action; (2) there was a final judgment on the merits; and (3) the party against whom the estoppel is asserted was a party to or in privity with a party in the first action." *Durkin v. Shea & Gould*, 92 F.3d 1510 (9th Cir. 1996).

"[S]pecial circumstances—such as reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation—may warrant an exception to the normal rules of preclusion." *Durkin v. Shea & Gould*, 92 F.3d 1510, 1515 (9th Cir. 1996) (quotation marks omitted). "In short, the parties must have had a full and fair opportunity to litigate." *Id*. (quotation marks omitted). "The party seeking to establish preclusion has the burden of proof of all elements, including that no exception applies." *In re Assoc'd Vintage Group, Inc.*, 283 B.R. 549, 562 (B.A.P. 9th Cir. 2002) (citing *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407-08 (9th Cir. 1985)). "Doubts are resolved against preclusion." *Id*. (citing *Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir. 1980)).

Because the undisputed facts show that Leisure Corporation knew of its objection to Prochnow's fees before they were approved, had sufficient opportunity to object to them, and because the Payment Order was a final adjudication of the fees owed to Prochnow, the court agrees that res judicata was properly applied to bar Leisure Corporation's claims for legal malpractice and breach of fiduciary duty.

The bankruptcy court cited cases from other jurisdictions, *In re Iannochino*, 242 F.3d 36 (1st Cir. 2001) and *In re Intelogic Trace*, 200 F.3d 382 (5th Cir. 2000), to support the conclusion that approval of an attorney's final fee award can act as res judicata against a subsequent claim for attorney malpractice. Dismissal Order at 29, 31. The court in *Iannochino* noted that "[u]nder section 330, the bankruptcy court must consider 'the nature, the extent, and the value of'" services rendered when deciding whether to authorize payment of fees for those services. 242 F.3d at 47 (quoting 11 U.S.C. § 330(a)(3)(A)). "A bankruptcy court therefore makes an implied 'finding of quality and value' in the professional services provided to the [debtors] during the bankruptcy." *Id*. (quoting *Intelogic Trace*, 200 F.3d at 387). In both cases, the courts held that because a court award

1    of professional fees under 11 U.S.C. § 330 depends upon an evaluation of the quality and value of

2    the professional's services, a later malpractice action would necessarily arise from the "same nucleus

3    of operative facts" and therefore involves the same cause of action for purposes of preclusion.

4    *Intelogic Trace*, 200 F.3d at 387; *see also Iannochino*, 242 F.3d at 46-49.

5         The reasoning of *Iannochino* and *Intelogic Trace* appears sound and also applies to Leisure

6    Corporation's claim for breach of fiduciary duty.  Admittedly, *Iannochino* and *Intelogic Trace*

7    involved fee applications that were formally filed and objected to, whereas Prochnow never filed a

8    final fee application in the instant case.  However, the undisputed facts demonstrate that Leisure

9    Corporation had ample opportunity to litigate the Payment Order.  "Res judicata forecloses

10   relitigation if there has been an opportunity to litigate once, whether or not it has been availed of."

11   *Sherrer v. Sherrer*, 334 U.S. 343, 367 (1948) (Frankfurter, J., dissenting).

12        The bankruptcy court pointed to several specific opportunities that Leisure Corporation had

13   to object to Prochnow's fees in the course of bankruptcy proceedings. Drucker approved and signed

14   the Settlement Agreement as Leisure Corporation's principal while advised by independent counsel.

15   Drucker attended the December 14, 2000 hearing on the motion to approve the Settlement

16   Agreement, which included a motion "For Authorizing Payment of Attorneys' Fees and Costs to

17   Prochnow and Campeau," and signed a declaration in favor of approval.  After the Settlement

18   Agreement was approved the terms of Prochnow's compensation were given to all parties.  Drucker

19   failed to object to Prochnow's fees at the February 8, 2001 hearing even though the subject was

20   explicitly raised by the bankruptcy court.  In addition, Leisure Corporation should not have expected

21   a further opportunity to object to Prochnow's fees because the bankruptcy court specifically did not

22   reserve further jurisdiction over Prochnow's fees at that hearing.  In addition, the bankruptcy court

23   points out that Drucker actually did object to Prochnow's fees.  On January 14, 2001, Drucker sent

24   an *ex parte* letter to the bankruptcy court expressing dissatisfaction with Prochnow's fees, which the

25   bankruptcy court filed under seal and forwarded to the attorneys in the case.  Dismissal Order at 10.

26        The fact that Drucker actually sent his objections to Prochnow's fees to the bankruptcy court,

27   however deficient in form, undercuts Leisure Corporation's claim that Prochnow's economic duress

28

OPINION AFFIRMING DISMISSAL OF AMENDED
COMPLAINT BY THE UNITED STATES BANKRUPTCY
COURT

1  prevented Leisure Corporation from objecting to the Payment Order at the February 8, 2001 hearing.

2  Economic duress may be invoked upon "the doing of a wrongful act which is sufficiently coercive to

3  cause a reasonably prudent person faced with no reasonable alternative to succumb to the

4  perpetrator's pressure." *Rich & Whillock v. Ashton Dev.*, 157 Cal. App. 3d 1154, 1158 (1984).

5  However, accepting for the sake of argument that Leisure Corporation was under duress to agree to

6  the Settlement Agreement, it is evident that such pressure did not discourage Drucker from making

7  the bankruptcy court aware that he had objections to Prochnow's fees.  Yet when presented with an

8  opportunity to formally air these objections at the February 8, 2001 hearing, Drucker, Leisure

9  Corporation's principal, remained silent.

10         The bankruptcy court also addressed the finality of the Payment Order, noting that ordinarily

11  interim fee orders are considered interlocutory and therefore not appealable.  *See In re Four Seas*

12  *Cent.,* 754 F.2d 1416 (9th Cir. 1985).  However, "[a] bankruptcy court order is final and thus

13  appealable where it 1) resolves and seriously affects substantive rights and 2) finally determines the

14  discrete issue to which it is addressed."  *In re Lewis*, 113 F.3d 1040, 1043 (9th Cir. 1997) (citations

15  and quotation marks omitted).  Under pre-1984 bankruptcy law, bankruptcy court order that

16  "conclusively determined the entire section 330 compensation to be paid [to an attorney] . . .

17  constitutes a final judgment, order, or decree appealable under 28 U.S.C. § 1293(b)."  *In re*

18  *Yermakov*, 718 F.2d 1465, 1469 (9th Cir. 1983) (citations and quotation marks omitted).  However,

19  the 1984 revisions to the bankruptcy code repealed § 1293; appealability of bankruptcy court orders

20  is now determined under 28 U.S.C. § 158.  *In re Haw. Corp.*, 796 F.2d 1139, 1141 (9th Cir. 1986).

21  The language in "§§ 1293(b) and 158(d)" is "nearly identical."  *Walsh Trucking Co. v. Ins. Co. of N.*

22  *Am.*, 838 F.2d 698, 701 n.5 (3rd Cir. 1988); *see also McClain v. Apodaca*, 793 F.2d 1031, 1032 (9th

23  Cir. 1986) (referring to "28 U.S.C. § 158(d)" as "former 28 U.S.C. § 1293(b)").

24         Under *Lewis* and *Yermakov*, the determination of Prochnow's fees in the Payment Order was

25  appealable.  The record clearly indicate that the Payment Order conclusively determined Prochnow's

26  compensation in this case:  His role as special counsel was completed by the Settlement Agreement,

27

28

1   he had no further role to play in the proceedings, the Payment Order called for immediate payment

2   of Prochnow's fees, and the court did not reserve jurisdiction over the amount of fees.

3       Because the Payment Order was a final appealable order, because Leisure Corporation could

4   have raised formal objections to the Payment Order but chose not to do so, and because the Payment

5   Order was a conclusive determination of the quality and value of legal services rendered by

6   Prochnow, the court affirms the bankruptcy court's determination that Leisure Corporation's claims

7   for malpractice and breach of fiduciary duty were precluded by the res judicata effect of the Payment

8   Order.[7]

9   **D.  Leisure Corporation Did Not Establish Essential Elements of its Claims for Breach of Contract and Intentional Interference**

10      Summary judgment with respect to the breach of contract and intentional interference claims

11  was properly granted by the bankruptcy court on the basis that Leisure Corporation lacked evidence

12  of essential elements of each claim.

13      **1.  Breach of Contract**

14      "[T]he elements of the cause of action [for breach of contract] are the existence of the

15  contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant and

16  damages."  *First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).  Leisure

17  Corporation claims Prochnow breached the Factoring Agreement, allegedly causing Leisure

18  Corporation over $200,000 in damages.  Leisure Corporation's allegations do not set forth a viable

19  breach of the contract claim because no performance was yet due by either party and Leisure

20  Corporation cannot point to any specific contractual term that was breached by Prochnow.

21      However, Leisure Corporation alleges that Prochnow effectively repudiated and

22  anticipatorily breached the Factoring Agreement in its entirety prior to the mediation session which

23  led to the Settlement Agreement.  "Although it is true that an anticipatory breach or repudiation of a

24  contract by one party permits the other party to sue for damages without performing or offering to

25

26

27  [7]  The court therefore does not reach Leisure Corporation's assertion that the bankruptcy court incorrectly determined that Prochnow had no legal duty to Leisure Corporation for the purposes of Leisure Corporation's legal malpractice and breach of fiduciary duty claims.

28  OPINION AFFIRMING DISMISSAL OF AMENDED COMPLAINT BY THE UNITED STATES BANKRUPTCY COURT

17

perform its own obligations . . . this does not mean damages can be recovered without evidence that, but for the defendant's breach, the plaintiff would have had the ability to perform." *Ersa Grae Corp. v. Fluor Corp.*, 1 Cal. App. 4th 613, 625 (1991).  Under California law,

> in an action for breach by an unconditional repudiation it is still a condition precedent to the plaintiff's right to a judgment for damages that he should have the ability to perform all such conditions.  If he could not or would not have performed the substantial equivalent for which the defendant's performance was agreed to be exchanged, he is given no remedy in damages for the defendant's non-performance or repudiation.

*Id.* (citation and quotation marks omitted).  Leisure Corporation cannot establish a right to damages for breach because Leisure Corporation had no ability to perform the Factoring Agreement without bankruptcy court approval.

Title 11 U.S.C. § 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  "After notice and hearing" means "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances."  11 U.S.C. § 102(1)(A). While 11 U.S.C. § 102(1)(B) authorizes certain sales without a hearing where "(i) such a hearing is not requested timely by a party in interest; or (ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act," a hearing was requested timely in the instant case.  Therefore, "[u]nder § 363(b), notice and a hearing is required for an assignment or sale of an estate asset.  If the bankruptcy court does not approve a sale or assignment, then that sale or disposition is not effective."  *In re Anchorage Nautical Tours, Inc.*, 145 B.R. 637, 642 (B.A.P. 9th Cir. 1992).

The agreement to sell an interest in Leisure Corporation's judgment was clearly not in the ordinary course of Leisure Corporation's wax museum business.  The Factoring Motion was set for hearing on September 20, 2000, and nothing in the Factoring Agreement required any performance prior to that date.  An objection to approval of the Factoring Agreement was timely filed on September 15, 2000.  Dismissal Order at 40.  Therefore, Leisure Corporation simply had no authority to perform on the agreement, nor could it be bound by the agreement, until the objection had been properly heard.  *See Vecchio v. Stroud Ford, Inc.*, 205 B.R. 722, 726 (Bankr. M.D. Pa.

1996) ("[I]f a timely objection is filed to a noticed agreement to perform an act out of the ordinary course of business, then the debtor-in-possession does not have the authority to perform the action and cannot be bound to its terms until the objection is disposed of."). The approval of the Settlement Agreement then rendered the Factoring Agreement moot. Furthermore, Leisure Corporation was fully aware that court approval was a prerequisite to the Factoring Agreement. "When . . . two parties execute a contract with the understanding that the approval of a third party is necessary for the agreement to take effect, the contract is not complete until the third party has approved." *Santa Clara-San Benito Chapter v. Local Union No. 332*, 40 Cal. App. 3d 431, 436 (1974). "Until that happens neither party is bound by the agreement." *Id*.

Leisure Corporation argues that Prochnow should be held liable for breach of contract because he effectively prevented bankruptcy court approval of the Factoring Agreement from being obtained. "The ordinary rule is that one who voluntarily prevents the performance of some act upon which an obligation depends will be precluded from setting up such nonperformance as a defense." *Carl v. Eade*, 81 Cal. App. 356, 358 (1927). However, as noted above, Leisure Corporation simply had no authorization to enter into the Factoring Agreement until appropriate notice and opportunity for hearing was given. An objection was timely filed which rendered a hearing mandatory. Leisure Corporation has not alleged that Prochnow in any way caused Silver to file his objection. The bankruptcy court also clearly indicated in its Dismissal Order that it would still have approved the Settlement Agreement and not the Factoring Agreement even had it known of the Factoring Agreement at that time. Regardless of Leisure Corporation's allegations of duress, Prochnow's actions cannot constitute a breach of the Factoring Agreement under California law.

### 2. Intentional Interference with Prospective Economic Advantage

The elements of the tort of intentional interference with prospective economic advantage include "(1) the existence of a prospective business relationship containing the probability of future economic rewards for plaintiff; (2) knowledge by defendant of the existence of the relationship; (3) intentional acts by defendant designed to disrupt the relationship; (4) actual causation; and, (5) damages to plaintiff proximately caused by defendant's conduct." *CrossTalk Prods. v. Jacobson*,

OPINION AFFIRMING DISMISSAL OF AMENDED
COMPLAINT BY THE UNITED STATES BANKRUPTCY
COURT

65 Cal. App. 4th 631, 646 (1998).  Under this theory, the plaintiff also must show that the defendant "engaged in conduct that was wrongful by some legal measure other than the fact of interference itself."  *Della Penna v. Toyota Motor Sales, U.S.A.,* 11 Cal. 4th 376, 393 (1995).  The Ninth Circuit's decision in *Martin Tug & Barge v. Westport Petrol.*, 271 F.3d 825 (2001), is instructive.  The court in *Martin Tug* identified several principles of California law for evaluating a claim for intentional interference.  In that case, the court stated that the tort generally involves "interference with an economic relationship by a third-party stranger to that relationship, so that an entity with a direct interest or involvement in that relationship is not usually liable for harm caused by pursuit of its interests."  *Id.* at 832.  The court also stated that "wrongful" conduct under the tort generally required more than a malicious motive, noting that "there are no post-*Della Penna* cases that actually found liability on the basis that the defendant merely had a wrongful motive."  *Id.*

Prochnow was not a stranger to the relationship between Leisure Corporation and Law Finance Group because the Factoring Agreement explicitly required Prochnow to "adjust" his appellate lien rights in the pending judgment to those of Law Finance Group.  As noted above, the Factoring Agreement itself was never binding on any of the parties because the bankruptcy court never approved it.  Whatever duty of good faith Prochnow may have had to "cooperate" in obtaining approval of the Factoring Agreement was properly discharged under the circumstances, because (1) Silver timely filed an objection to the Factoring Agreement, and (2) the court subsequently approved the Settlement Agreement as being in the best interests of the estate.

The Ninth Circuit's opinion in *Everett v. Perez* (*In re Perez*) is instructive here:

> Counsel for the estate must keep firmly in mind that his client is the estate and not the debtor individually.  Counsel has an independent responsibility to determine whether a proposed course of action is likely to benefit the estate or will merely cause delay or produce some other procedural advantage to the debtor.  While he must always take his directions from his client, where counsel for the estate develops material doubts about whether a proposed course of action in fact serves the estate's interests, he must seek to persuade his client to take a different course or, failing that, resign.  Under no circumstances, however, may the lawyer for a bankruptcy estate pursue a course of action, unless he has determined in good faith and as an exercise of his professional judgment that the course complies with the Bankruptcy Code and serves the best interests of the estate.

30 F.3d 1209, 1219 (9th Cir. 1994).  Prochnow's October 21, 2000 letter, while showing Prochnow's interest in payment of his fees, also indicates Prochnow's position that the Factoring Agreement would not be in the best interest of Leisure Corporation's creditors.  By discharging his duty to seek a result for the benefit of creditors and by persuading Drucker, if somewhat harshly, to act in manner beneficial to creditors, Prochnow cannot be said to have engaged in "wrongful" conduct sufficient to constitute intentional interference with prospective economic advantage.  Summary judgment in favor of Prochnow was properly granted with respect to Leisure Corporation's intentional interference claim.

**E.  Leisure Corporation Waived Any Right to a Jury Trial**

Leisure Corporation raises the issue of its right to a jury trial for the first time in this appeal. The bankruptcy court, in its June 26, 2002 order lifting the stay of the instant adversary proceeding, indicated that the proceeding was a core matter and therefore Leisure Corporation had no right to jury trial under the Seventh Amendment.  As Leisure Corporation did not raise the issue in the proceedings below and therefore waived any right to a jury trial, the court does not consider the issue.

**III.  ORDER**

For the foregoing reasons, the court affirms the decision of the bankruptcy court.

DATED:      2/22/07                                          *Ronald M Whyte*

                                                            RONALD M. WHYTE
                                                            United States District Judge

OPINION AFFIRMING DISMISSAL OF AMENDED
COMPLAINT BY THE UNITED STATES BANKRUPTCY
COURT

1  **Notice of this document has been electronically sent to:**

2  **Counsel for Plaintiffs:**

3  Raymond H. Aver              ray@averlaw.com

4  **Counsel for Defendants:**

5  Pamela M. Ferguson
   Peter Dixon                  dixon@ldbb.com
6  Annie Verdries               verdries@lbbslaw.com
   Helen S. Rakove              hsr@hogefenton.com

7

8  Counsel are responsible for distributing copies of this document to co-counsel that have not
   registered for e-filing under the court's CM/ECF program.

9

10
   **Dated:**  ___2/23/07___               _____/s/ MAG_____
11                                          **Chambers of Judge Whyte**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
   OPINION AFFIRMING DISMISSAL OF AMENDED
   COMPLAINT BY THE UNITED STATES BANKRUPTCY
   COURT